Slip Op. 11- 144

## UNITED STATES COURT OF INTERNATIONAL TRADE

UNION STEEL,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

UNITED STATES STEEL CORPORATION and NUCOR CORPORATION,

Defendant-Intervenors.

Before: Timothy C. Stanceu, Judge

Court No. 08-00101

## OPINION AND ORDER

[Affirming a remand redetermination addressing the application of a model-match methodology in an administrative review of an antidumping duty order and granting plaintiff's motion for reconsideration of the court's previous affirmance of the use of the zeroing methodology in that review]

Dated: November 21, 2011

*Donald B. Cameron*, *Julie C. Mendoza*, *R. Will Planert*, *Brady W. Mills*, and *Mary S. Hodgins*, Troutman Sanders LLP, of Washington, DC, for plaintiff.

*Tara K. Hogan*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Claudia Burke*, Assistant Director. Of counsel on the brief was *Daniel J. Calhoun*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Robert E. Lighthizer*, *Ellen J. Schneider*, and *Jeffrey D. Gerrish*, Skadden, Arps, Slate Meagher & Flom LLP, of Washington, DC, for defendant-intervenor United States Steel Corporation.

*Timothy C. Brightbill* and *Alan H. Price*, Wiley Rein LLP, of Washington, DC, for defendant-intervenor Nucor Corporation.

Stanceu, Judge: In this action, plaintiff Union Steel Manufacturing Co., Ltd. ("Union")

contests a final determination ("Final Results") issued by the International Trade Administration,

U.S. Department of Commerce ("Commerce" or the "Department"), in the thirteenth

administrative review of an antidumping duty order on imports of certain corrosion-resistant

carbon steel flat products ("CORE" products or "CORE") from the Republic of Korea ("Korea").

Compl.; *See Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of*

*Korea: Notice of Final Results of the Thirteenth Admin. Review*, 73 Fed. Reg. 14,220 (Mar. 17,

2008) ("*Final Results*").  The thirteenth review applied to imports of Korean CORE ("subject

merchandise") entered during the period of August 1, 2005 through July 31, 2006 (the "period of

review" or "POR").  *Final Results*, 73 Fed. Reg. at 14,220.  Union challenges the Department's

determination in the Final Results that subject non-laminated, painted CORE products sold in the

United States and laminated CORE products plaintiff sold in the home market of Korea could be

compared as products "identical in physical characteristics" within the meaning of section

771(16)(A) of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1677(16)(A) (2006), a

determination the court held unlawful in an opinion and order issued earlier this year.  *Union*

*Steel v. United States*, 35 CIT __, 753 F. Supp. 2d 1317 (2011) ("*Union III*").  Union also

challenges the Department's use of the "zeroing methodology"[1] in the thirteenth administrative

---

[1] The court described the zeroing methodology as follows:
To calculate a weighted-average dumping margin in an administrative review,
Commerce first must determine, for each entry of subject merchandise falling within
the period of review, the normal value and the export price (or the constructed export
price if the export price cannot be determined). Commerce then determines a margin

(continued...)

review, which use the court, in ruling on the Department's first redetermination upon remand

("First Remand Results"), upheld in an opinion and order issued in 2009.  *Union Steel v. United*

*States*, 33 CIT __, 645 F. Supp. 2d 1298 (2009) ("*Union II*"); *Final Results of Redetermination*

*Pursuant to Remand* (Dec. 28, 2009), ECF No. 79 ("*First Remand Results*").

     Before the court is the Department's determination in response to the court's second

remand order ("Second Remand Results"), in which the Department, reversing the position it

took in the Final Results and in the First Remand Results, determined that subject non-laminated,

painted CORE may not lawfully be compared to laminated CORE as products identical in

physical characteristics.  *Final Results of Redetermination Pursuant to Remand* 5-8 (April 11,

2011), ECF No. 143 ("*Second Remand Results*").  As a result of this change in position,

Commerce decreased Union's weighted-average dumping margin from 4.35% to 3.59%.  *Id.*

at 20.  Also before the court is Union's motion requesting that the court reconsider the decision

in *Union II* affirming the Department's use of zeroing in the thirteenth administrative review,

which motion Union bases on a decision of the U.S. Court of Appeals for the Federal Circuit

("Court of Appeals") issued after the Final Results and the court's *Union II* decision.  Pl. Union

Steel's Mot. for Reconsideration (April 5, 2011), ECF No. 142 ("Pl.'s Mot.").

---

    [1](...continued)
for each entry according to the amount by which the normal value exceeds the export
price or constructed export price. If the export price or constructed export price on a
particular entry is higher than normal value, Commerce, in calculating a
weighted-average margin, assigns a margin of zero, not a negative margin, to the
entry.  Finally, Commerce aggregates these individual margins in determining a
weighted-average dumping margin.
*Union Steel v. United States*, 33 CIT __, __, 645 F. Supp. 2d 1298, 1305 (2009) ("*Union II*")
(citations omitted).

The court affirms the Department's determination that subject non-laminated CORE may

not be compared with laminated CORE sold in the home market as merchandise that is identical

in physical characteristics.  In response to Union's motion for reconsideration, the court sets

aside its previous affirmance of the Department's decision to apply zeroing in the thirteenth

administrative review and determines that a remand is appropriate under which Commerce must

reconsider that decision.

## I. BACKGROUND

Background on this litigation is set forth in the court's prior opinions and orders and

supplemented herein.  *Union Steel v. United States*, 33 CIT __, __, Slip Op. 09-47, at 3-7

(May 19, 2009) ("*Union I*"); *Union II*, 33 CIT at __, 645 F. Supp. 2d at 1300-02; *Union III*,

35 CIT at __, 753 F. Supp. 2d at 1319-1320.

Plaintiff filed its motion for reconsideration on April 5, 2011, relying on the decision of

the Court of Appeals in *Dongbu Steel Co. v. United States*, 635 F.3d 1363 (Fed. Cir. 2011).  Pl.'s

Mot.  On May 9, 2011, defendant and defendant-intervenors Nucor Corporation ("Nucor") and

United States Steel Corporation ("U.S. Steel") opposed this motion.  Def.'s Resp. in Opp'n to Pl.

Union Steel's Mot. for Reconsideration (May 9, 2011), ECF No. 151 ("Def.'s Opp'n"); Def.-

intervenor's Opp'n to Union Steel's Mot. for Reconsideration (May 9, 2011), ECF No. 149

("Nucor's Opp'n"); Mem. of Def.-intervenor United States Steel Corp. in Opp'n to Pl. Union

Steel's Mot. for Reconsideration (May 9, 2011), ECF No. 150 ("U.S. Steel's Opp'n").

The Department filed the Second Remand Results on April 11, 2011, in response to the

court's remand order in *Union III*.  *Second Remand Results*; *Union III*, 35 CIT at __, 753 F.

Supp. 2d at 1333.  Plaintiff commented in support of the Second Remand Results on May 11,

2011.  Pl. Union Steel's Comments on the U.S. Dept. of Commerce's April 11, 2011 Final

Results of Redetermination Pursuant to Ct. Remand (May 11, 2011), ECF No. 152.  On May 12,

2011, defendant-intervenors filed comments in opposition to the Second Remand Results.  Nucor

Corp.'s Comments on Second Remand Results (May 12, 2011), ECF No. 154 ("Nucor's

Comments"); United States Steel Corp.'s Comments on the Final Results of Redetermination

Pursuant to Ct. Remand Issued by the Dept. of Commerce (May 12, 2011), ECF No. 153 ("U.S.

Steel's Comments").  On May 26, 2011, defendant filed its reply in support of the Second

Remand Results.  Def.'s Resp. to Def.-intervenors' Comments on the Dept. of Commerce's

Remand Results (May 26, 2011), ECF No. 164.  On the same day, Union moved for leave to file

a reply in support of the Second Remand Results.  Pl. Union Steel's Mot. for Leave to Reply to

U.S. Steel Corp. & Nucor Corp.'s May 11, 2011 Comments on the U.S. Dept. of Commerce's

April 11, 2011 Final Results of Redetermination Pursuant to Ct. Remand (May 26, 2011), ECF

No. 163.

## II. DISCUSSION

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980,

28 U.S.C. § 1581(c) (2006), pursuant to which the court reviews actions commenced under

section 516A of the Tariff Act, 19 U.S.C. § 1516a, including an action contesting the final

results of an administrative review that Commerce issues under section 751 of the Tariff Act,

19 U.S.C. § 1675(a).  The court "shall hold unlawful any determination, finding, or conclusion

found . . . to be unsupported by substantial evidence on the record, or otherwise not in

accordance with law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).

A.  The Second Remand Results Lawfully Determined that Non-Laminated, Painted CORE Was
Not "Identical in Physical Characteristics" to Laminated CORE

In an administrative review, Commerce determines the normal value, the export price or

constructed export price, and the dumping margin for each entry of the subject merchandise.

19 U.S.C. § 1675(a)(2).  Determining a dumping margin requires Commerce to compare the U.S.

sale price with the normal value, which typically is based on the price at which the foreign like

product is sold for consumption in the exporting country (the "home market").  19 U.S.C.

§ 1677b(a)(1)(B).  The statute directs in § 1677(16)(A) that Commerce, in determining the

foreign like product, first seek to compare a U.S. sale of subject merchandise with a home-

market sale of merchandise "which is identical in physical characteristics with, and was

produced in the same country by the same person as, that merchandise.''  *Id.* § 1677(16)(A).  If

no such comparison can be satisfactorily made, Commerce, in accordance with § 1677(16)(B),

seeks to match the subject merchandise with merchandise produced in the same country,

produced by the same person, that is "like that merchandise in component material or materials

and in the purposes for which used," and "approximately equal in commercial value to that

merchandise."  *Id.* § 1677(16)(B).  If the latter comparison cannot be satisfactorily made under

§ 1677(16)(B), Commerce is to seek to match the subject merchandise under § 1677(16)(C) with

merchandise produced in the same country and by the same person that is "of the same general

class or kind as the subject merchandise . . . like that merchandise in the purposes for which used

. . . [and] may reasonably be compared with that merchandise."  *Id.* § 1677(16)(C).

In the Final Results and the First Remand Results, Commerce rejected Union's proposal

that laminated CORE comprise a separate type category for model matching purposes and

accordingly included laminated CORE within the "other painted" type category.  Issues &

Decisions Mem., A-580-816, ARP 3-08, at 13-14 (Mar. 10, 2008) (Admin. R. Doc. No. 4563)

("*Decision Mem.*"); *First Remand Results* 1.  As a result, Commerce compared, as merchandise

"identical in physical characteristics" for purposes of § 1677(16)(A), subject merchandise

consisting of non-laminated, painted CORE with not only home market non-laminated, painted

CORE but also with Union's laminated CORE products, which Union sold in the home market,

but not in the U.S. market, during the POR.  *First Remand Results* 1; *Union III*, 35 CIT at __,

753 F. Supp. 2d at 1319-20 (explaining that the Department's determination that these products

were the same "model-match type" meant that they were compared as identical under

§ 1677(16)(A)).  Because it considered the comparisons to be of "identical" merchandise,

Commerce did not make an adjustment ("difmer adjustment") to account for differences in the

costs of manufacturing laminated and non-laminated, painted CORE.  *Union III*, 35 CIT at __,

753 F. Supp. 2d at 1320-22.

    The court in *Union III* held unlawful the Department's decision to compare these two sets

of products as products "identical in physical characteristics."  35 CIT at __, 753 F. Supp. 2d

at 1333.  Citing the Department's statutory obligation, the court stated that "[s]uch comparisons

are lawful only if substantial evidence on the record in this case can support a factual

determination that the physical characteristics distinguishing laminated CORE products from the

'other painted,' *i.e.*, non-laminated, CORE products . . . are minor and not commercially

significant."  *Id.* at __, 753 F. Supp. 2d at 1322.  The court then determined that substantial

record evidence did not support such a factual determination, rejecting the critical findings in the

First Remand Results as either insufficiently probative on the question of whether the

distinguishing characteristics are minor and not commercially significant or unsupported by

substantial record evidence.  *Id.* at __, 753 F. Supp. 2d at 1323-31.  The court found four of the

Department's findings to be insufficiently probative on that question: (1) that the sale price of

laminated CORE was in the same range as the sale price of non-laminated, painted CORE;

(2) that laminated and non-laminated, painted CORE sold at identical prices more frequently in

this POR than in the previous POR; (3) that a comparable number of customers bought both sets

of products in both the thirteenth review POR and the previous POR; and (4) that the cost of

manufacture of laminated CORE was in the same range as the cost of manufacture of non-

laminated, painted CORE.  *Id.* at __, 753 F. Supp. 2d at 1323-25.  The court rejected as

unsupported by record evidence the finding in the First Remand Results that laminated CORE

was not marketed separately from non-laminated, painted CORE, citing record evidence

consisting of Union's product brochures.  *Id.* at __, 753 F. Supp. 2d at 1326-27.  The court

concluded in *Union III* that the record as a whole did not support a determination that laminated

and non-laminated, painted CORE products were identical in physical characteristics under

19 U.S.C. § 1677(16)(A), *id.* at __, 753 F. Supp. 2d at 1327-31, set aside the First Remand

Results as contrary to law, and ordered a remand, *id.* at __, 753 F. Supp. 2d at 1333.  The court's

remand order explained that the state of the record allowed Commerce two options.  The

Department's first option was to "reopen the record to reinvestigate the question of whether the

physical differences that have been established to exist between laminated and non-laminated,

painted CORE products are minor and commercially insignificant."  *Id.* at __, 753 F. Supp. 2d

at 1333.  The Department's second option was to "alter the model-match methodology that was

applied in the [First Remand Results] so that laminated and non-laminated, painted CORE

products are not compared according to 19 U.S.C. § 1677(16)(A) . . . ." *Id.* at __, 753 F. Supp. 2d at 1333.

In the Second Remand Results, Commerce chose the second option, considering it unnecessary to reopen the record for further investigation. *Second Remand Results* 4.  Noting that the record contained evidence pertaining to the cost of manufacture, sales price, production processes, and marketing of both types of CORE, the Department stated that "sufficient factual information already exists on the record for the Department to determine whether the physical differences distinguishing laminated CORE products and non-laminated, painted CORE products are minor and not commercially significant." *Id.* at 3-4.  Upon reconsidering the record evidence, Commerce determined that the two groups of products were not identical in physical characteristics.  *Id.* at 4.  Commerce based this determination on four findings: (1) the two product groups are distinguished by significant physical differences, *id.* at 5 ("[L]aminated CORE products by their very nature are not painted products" and "are coated by attaching a plastic film to a CORE substrate . . .)"; (2) "the cost of production for laminated CORE products is higher than other non-laminated, painted CORE products," *id.* at 6; (3) "the unit price for laminated CORE products is considerably higher than the unit price of non-laminated, painted CORE products," *id.*; and (4) laminated and non-laminated products are marketed differently, the record evidence having demonstrated that "Union and Unico (Union's affiliate) both differentiate between laminated CORE products and non-laminated, painted CORE products in their brochures," *id.* at 6-7.

The Department's determination on remand not to compare laminated and non-laminated, painted CORE as products "identical in physical characteristics," 19 U.S.C. § 1677(16)(A), rests

on essential factual findings that are supported by substantial evidence on the record.

Specifically, the evidence justified the Department's findings that the two groups of products

differed physically (because of the presence of laminate as opposed to paint) and also differed as

to cost of manufacture, sales price, production processes, and marketing.  The record evidence,

considered on the whole, supported the finding that the physical differences had commercial

significance.  As the court explained in *Union III*, the record lacks substantial evidence to

support the contrary determination that the physical differences are minor and commercially

insignificant.  *Union III*, 35 CIT at __, 753 F. Supp. 2d. at 1332-33.

Defendant intervenors advance several reasons why they believe the court should not

affirm the Department's decision as set forth in the Second Remand Results.  The court rejects

these arguments.

Nucor argues that the Department's decision is arbitrary and not supported by substantial

evidence, alleging that "[t]he Department has failed to explain why the record evidence that it

previously found unconvincing or inconclusive now–after two court remands–provides a

sufficient basis to make a model-match change."  Nucor's Comments 3-4.  The Second Remand

Results, contrary to Nucor's characterizations, not only are supported by substantial evidence but

contain a satisfactory explanation, grounded in the four specific findings the court recounted

above, of why the record evidence is sufficient to support an ultimate determination that the two

groups of products are not "identical in physical characteristics" within the meaning of the

statute. *See Second Remand Results* 5-7.  Regarding the justification for changing the model-

match methodology, Commerce identified a compelling reason: its obligation "to comply with

the statutory requirements of 19 U.S.C. § 1677(16)(A)."  *Id.* at 8.

Nucor argues, further, that in light of the Department's reversing its findings on the same record, "[a]t a minimum, the Court should order the Department, on remand, to re-open the record and collect additional information on the model-match issue."  Nucor's Comments 7.  The court does not have a basis to order Commerce to reopen the record.  As the court's decision in *Union III* recognized, Commerce has the discretion to reopen or not reopen the record in the circumstances presented here.  The court emphasized that the record as it now exists does not support a finding that the physical differences between the two groups of products are minor and commercially insignificant.  *Union III*, 35 CIT at __, 753 F. Supp. 2d at 1327-31.  In contrast, the record contains substantial evidence to support each of the essential findings underlying the Department's determination in the Second Remand Results.  In brief summary, the record reveals significant physical differences, including the major difference that laminated products are not painted products, and it contains substantial evidence that the differences have commercial significance.

Next, Nucor argues (as does U.S. Steel) that the Department's analysis was insufficient because the Second Remand Results do not explain the Department's abandoning its prior positions in these proceedings.  U.S. Steel Comments 8-11; Nucor's Comments 4-7.  This argument is based on the misguided premise that Commerce is obligated to provide some explanation, beyond that included in the Second Remand Results, for departing from positions the court has rejected.  U.S. Steel also directs the court's attention to inconsistencies between the Second Remand Results and prior briefing in this action, U.S. Steel's Comments 10 (citing Def.'s Resp. to Pl.'s Post-Oral Argument Comments on Commerce's Remand Determination 8-9 (Sept. 24, 2010), ECF No. 130).  Contrary to the implied premise of U.S. Steel's argument,

Commerce has no obligation to justify departures from prior litigation positions used to defend unlawful determinations.

Finally, Nucor objects that Commerce is reversing its position "based on the data and views of one CORE producer" who "only began challenging the Department's model-match before this Court after the 13th review," and that "there is no evidence on the record that the model-match hierarchy proposed by Union is representative of the Korean CORE industry, let alone the CORE industry as a whole." Nucor's Comments 6-7. Nucor submits that approval of Union's proposal "has the potential to encourage future manipulation of the model-match criteria by respondents." *Id.* at 7. The court finds no merit in this wide-ranging objection. Union unquestionably has the right under section 516A of the Tariff Act, 19 U.S.C. § 1516a, to challenge as contrary to 19 U.S.C. § 1677(16)(A) the Department's model-match methodology as applied to its own products in the thirteenth review. As the Second Remand Results acknowledge, that methodology was applied in the review based on an unlawful determination, *i.e.*, that the non-laminated, painted CORE that Union sold in the United States during the POR and the laminated CORE that Union sold in its home market during the POR satisfied the statutory "identical in physical characteristics" standard. Union, therefore, qualifies for a remedy upon judicial review of the Final Results under which the two product groups would no longer be compared as identical. With respect to Nucor's warning of "future manipulation," Commerce correctly responded in the Second Remand Results when Nucor made this same point in comments to the Department, stating that it was bound by the definition of "foreign like product" in 19 U.S.C. § 1677(16)(A) and that "[i]n this particular case, record evidence supports

the Department's decision to treat laminated CORE products as a separate type in its margin

analysis." *Second Remand Results* 11.

U.S. Steel argues that Commerce failed to apply the correct legal standard in determining

that the physical differences are commercially significant. U.S. Steel's Comments 4-7.

According to U.S. Steel, the correct legal standard, as sustained by the Court of Appeals in

*Pesquera Mares Australes Ltda. v. United States*, 266 F. 3d 1372, 1385 (Fed. Cir. 2001), is an

"industry-wide" standard under which the physical differences must be recognized as

commercially significant by an industry as a whole rather than by only an individual producer.

U.S. Steel's Comments 5. U.S. Steel argues that Commerce erred in the Second Remand Results

when it "did not apply the industry-wide standard" and instead "based its analysis solely on

Union's cost of production, prices and product brochures." *Id.* U.S. Steel argues that "like the

case in *Pesquera*, here there was absolutely no evidence of industry-wide acceptance of the

difference between paints and laminates as a commercially meaningful difference." *Id.* at 5-6.

This was legal error, U.S. Steel maintains, because Commerce was obliged to supply a reasoned

analysis upon changing its prior policies and standards and because the Court of Appeals

"determined that commercial significance was properly based on industry-wide standards, rather

than the claims of a single producer or individual customer preferences, in order to avoid the risk

of manipulation." *Id.* at 6-7.

U.S. Steel's argument misconstrues the holding in *Pesquera*. In that decision, the Court

of Appeals cited approvingly the Department's relying on industry-wide standards for

concluding that there was no commercially significant difference between "premium" salmon

and "super-premium" salmon. *Pequera*, 266 F.3d at 1385. The Court of Appeals opined on the

advantage of industry-wide standards in the context of the issue before it, which arose because

the two grades of salmon were shown by record evidence to differ in only minor, commercially

insignificant respects, such as the presence of certain minor aesthetic flaws.  *Id.* at 1383-85.  The

Court of Appeals upheld the Department's comparing as identical sales of salmon meeting a

quality grade of "super premium" with sales of salmon meeting only the quality grade of

"premium" because Commerce found that most industry participants did not distinguish between

the two grades, which finding was supported by substantial evidence.  *Id.*  *Pesquera* does not

hold that Commerce must find a basis in commercially-established, industry-wide product

standards before concluding that *any* two groups of products are not "identical in physical

characteristics" within the meaning of 19 U.S.C. § 1677(16)(A).

      U.S. Steel is also incorrect in arguing that Commerce erred by departing from a past

policy or standard without a reasoned analysis.  U.S. Steel's Comments 6-7.  U.S. Steel

overlooks the essential point that the court already has held contrary to law the "past policy or

standard," *i.e.*, the existing CORE model-match methodology, as that methodology was applied

to Union's products in the thirteenth review.  The argument also mischaracterizes the Second

Remand Results.  Commerce, whether or not required to do so, gave a compelling reason for

changing its established model-match methodology for CORE in response to the court's remand

order, *i.e.*, the need to comply with the requirement that merchandise compared under

§ 1677(16)(A) be identical in physical characteristics.  *See Second Remand Results* 11.

      Finally, U.S. Steel argues that the Second Remand Results inadequately analyze the

factual record, impermissibly reaching, on the same evidence, findings of fact that are the

opposites of those on which Commerce based its earlier decision.  U.S. Steel's Comments 4-11.

According to U.S. Steel, "Commerce has simply recited facts that it previously rejected and has decided to rely on them without any analysis" and "at the very least should have reserved decision on the model match question and re-opened the record." *Id.* at 11.  U.S. Steel urges that "[at] a minimum, Commerce must now be required to explain how evidence that was previously found to be insufficient, inconclusive or distortive can now constitute substantial evidence and serve as the basis for its determination." *Id.* at 11-12.  This argument is meritless.  The court already has found contrary to law–either as non-probative or unsupported by the record–the principal factual findings upon which Commerce reached its earlier determination.  As the court discussed previously, Commerce permissibly decided against reopening the record, correctly concluding that the record contained substantial evidence to support a finding that non-laminated, painted CORE and laminated CORE are distinguished by significant physical differences, and for a finding that those physical differences have commercial significance.  On remand, Commerce did not act contrary to law in reaching new findings based on the same evidentiary record.

Addressing individual findings by Commerce, U.S. Steel argues the Department's finding that laminated CORE was typically more expensive to produce than non-laminated, painted CORE not only was a "complete about-face" from the First Remand Results but also unsupported by substantial evidence.  *Id.* at 11.  This argument fails because substantial evidence is present on the record to support the finding.  In both its original and supplemental questionnaire responses, Union stated that producing laminated CORE costs more than producing painted CORE due to more expensive raw materials and more complicated processing.  *Letter from Union to the Sec'y of Commerce* 6 (Nov. 20, 2006) (Admin. R. Doc.

No. 3944) ("*Union's Questionnaire Resp.*"); *Letter from Union to the Sec'y of Commerce* 20

(Feb. 2, 2007) (Admin. R. Doc. No. 4036) ("*Union's Supplemental Questionnaire Resp.*")

("Because PET film and PVC film are more expensive than the various paints used for other

color coated products, including PVDF, and require more complicated processing know-how, the

production cost and sales price are higher than other painted products."). Quantitative data also

support this finding. The record contains data showing that in comparisons of thirty-nine sets of

otherwise identical CORE products, in thirty-four instances the laminated products were more

expensive to produce than the non-laminated, painted CORE products. *See* Pl. Union Steel's

Post-Oral Argument Comments on Commerce's Remand Determination 9 n.5 & attachment 1

(Aug. 20, 2010), ECF No. 119.

U.S. Steel also contends, inaccurately, that Commerce improperly construed evidence

that laminated and non-laminated, painted CORE go through separate production processes as

establishing that these products had commercially significant physical differences. U.S. Steel's

Comments 9-10. Commerce did not base its conclusion of commercial significance solely on the

"the fact that different production processes happen to be used," *id.* at 9, but determined instead

that different production processes resulted in the physical differences that, for various reasons

grounded in record evidence, were commercially significant, *Second Remand Results* 10

("Union's questionnaire responses, price and cost data, and product brochures all indicate that

the physical differences between laminated CORE products and non-laminated, painted CORE

products are neither minor nor commercially insignificant.").

For the reasons discussed in the foregoing, the court must affirm the determination in the

Second Remand Results that the subject non-laminated, painted CORE may not be compared

under 19 U.S.C. § 1677(16)(A) with home-market laminated CORE as merchandise identical in

physical characteristics.  Based on the Department's valid findings and the reasoning set forth in

the Second Remand Results, the court affirms as the appropriate corrective action the

Department's decision to classify the laminated CORE products as a separate type category and

thereby exclude Union's home market sales of this laminated CORE from the respective

comparisons.  The court will deny as moot plaintiff's motion for leave to file a reply to the

comments filed by the defendant-intervenors.

### B.  The Court Reconsiders its Prior Decision Upholding the Use of Zeroing in the Thirteenth Review and Orders an Appropriate Remand

Plaintiff requests that the court reconsider the decision in *Union II* affirming the

Department's use of zeroing methodology in the thirteenth administrative review, arguing that

the decision of the Court of Appeals in *Dongbu Steel Co. v. United States*, issued after the

court's decision in *Union II*, now establishes that the court's decision affirming zeroing in

*Union II* was incorrect.  Pl.'s Mot. 1-2.  In *Union II*, the court relied on decisions of the Court of

Appeals upholding the Department's use of zeroing in administrative reviews despite the

Department's having ceased applying the zeroing methodology in original investigations.

*Union II*, 33 CIT at __, 645 F. Supp. 2d at 1306-09 (citing *Corus Staal BV v. United States*, 502

F.3d 1370, 1375 (Fed. Cir. 2007) ("*Corus II*")).  Plaintiff argues that these decisions are not

precedents supporting the use of zeroing in this case, citing language in *Dongbu* in which the

Court of Appeals stated that it had "never considered" the precise question of whether

Commerce permissibly could interpret the statute to allow use of zeroing in administrative

reviews even after the Department had ceased to use zeroing in investigations.  Pl.'s Mot. 3-4;

*Dongbu*, 635 F.3d at 1370.

The court first addresses the question of the authority under which it may reconsider its prior order.  The authority under which plaintiff moves, USCIT Rule 59(a)(2), does not apply in this instance.  USCIT Rule 59(a)(2) applies "[a]fter a nonjury trial" and allows the court to reconsider prior decisions when a party moves for a new trial or rehearing "not later than 30 days after the entry of the judgment or order."  USCIT R. 59(b).  Although the Court of International Trade previously has concluded that the concept of a "nonjury trial" encompasses matters, such as this case, decided on the agency record, *see NSK Corp. v. United States*, 32 CIT __, __, 593 F. Supp. 2d 1355, 1362 (2008), Rule 59(a)(2) does not authorize the court to hear plaintiff's motion because plaintiff's motion, filed on April 5, 2011, came more than thirty days after the court's decision in *Union II*, which was on September 28, 2009.  *See Union II*, 33 CIT at __, 645 F. Supp. 2d at 1298; Pl.'s Mot; USCIT R. 6(b)(2) ("The court must not extend the time to act under . . . 59(b)").  Nothing in the court's rules, however, provides that USCIT Rule 59 is the only method by which the court can review a remand order.  *See Timken Co. v. United States*, 6 CIT 76, 78, 569 F. Supp. 65, 68 (1983).

The alternative authority cited by plaintiff, USCIT Rule 60(b)(6), also is inapplicable to plaintiff's motion.  *See* USCIT Rule 60(b)(6) (stating that "the court may relieve a party . . . from a final judgment, order or proceeding for . . . any other reason that justifies relief.").  As the advisory notes to the Federal Rules of Civil Procedure clarify, Rule 60(b) applies only to final decisions.  Fed. R. Civ. P. 60(b), advisory notes ("[I]nterlocutory judgments are not brought within the restrictions of the rule.").  The court's remand order in *Union II*, however, was not a final order.

Instead, the court may reconsider its decision in *Union II* pursuant to its general authority, which is recognized by USCIT Rule 54, to reconsider a non-final order prior to entering final judgment.  Rule 54 states that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of judgment."  USCIT R. 54(b).  As has been observed with respect to the analogous Fed. R. Civ. P. 60(b), motions for reconsideration not subject to Rule 60(b) "are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."  *See* Fed. R. Civ. P. 60(b), advisory notes.  This authority is recognized by at least one prior decision of this court, which stated that "the court retains the plenary power to modify or alter its prior non-final rulings, particularly where the equitable powers of the court are invoked."  *Timken*, 6 CIT at 78, 569 F. Supp. at 68.[2]

The court concludes that reconsideration of its prior decision affirming the use of zeroing is warranted in this case.  In two decisions issued this year, *JTEKT Corp. v. United States*, 642 F.3d 1378, 1383-85 (Fed. Cir. 2011) and *Dongbu*, the Court of Appeals has held that the final results of administrative reviews in which zeroing was used must be remanded so that Commerce may explain its interpreting the language of § 1677(35) inconsistently with respect to the use of zeroing in investigations and the use of zeroing in administrative reviews.  Following the decisions of the Court of Appeals in *JTEKT Corp.* and *Dongbu*, remands to the Department for such an explanation have been ordered in previous cases before this court.  *See, e.g.*, *SKF*

---

[2] Although this court in a prior case "declin[ed] to find the authority to rehear interlocutory orders under USCIT Rule 54(b)," it did so when reconsideration under USCIT Rule 59(a)(2) remained available and thus that case did not involve the issue before the court in this case, in which the time for a motion under USCIT Rule 59 has lapsed.  *NSK Corp. v. United States*, 32 CIT __, __, 593 F. Supp. 2d 1355, 1362 n.7 (2008).

*USA Inc. v. United States*, 35 CIT __, __, Slip Op. 11-121, at 16-18 (Oct. 4, 2011); *SKF USA*

*Inc. v. United States*, 35 CIT __, __, Slip Op. 11-94, at 10-13 (Aug. 2, 2011); *JTEKT Corp. v.*

*United States*, 35 CIT __, __, Slip Op. 11-92, at 6-10 (July 29, 2011).

　　　　The court concludes, upon reconsidering its decision in *Union II*, that it is appropriate to

set aside its affirmance of the use of zeroing and to direct Commerce to provide the explanation

contemplated by the Court of Appeals in *Dongbu* and *JTEKT Corp.*, each of which decisions

questioned the legality of the Department's construction of § 1677(35) and declined to affirm the

judgment of the Court of International Trade upholding that construction.  *See Dongbu*, 635 F.3d

at 1371-73; *JTEKT Corp.*, 642 F.3d at 1383-85.  The issues and decision memorandum

("Decision Memorandum") that Commerce issued to accompany the Final Results attempts to

explain the inconsistent interpretation of § 1677(35) using a rationale essentially the same as the

one the Court of Appeals rejected in *JTEKT Corp. Decision Mem.* 5.  The Decision

Memorandum provides a list of differences between investigations and administrative reviews

and then concludes that "[b]ecause of these distinctions," the Department's inconsistent

interpretation of § 1677(35) was not "improper."  *Id.*  The distinctions listed in the Decision

Memorandum include the different comparison methods for calculating a dumping margin in an

investigation or an administrative review, *id.* at 4-5 (citing 19 U.S.C. § 1677f-1(d); 19 C.F.R.

§ 351.414), and the fact that investigations determine whether an antidumping duty order will be

imposed, while administrative reviews establish antidumping duty assessment rates, *id.* at 5.[3]

---

[3] The entire discussion on the statutory construction issue reads as follows.
The Federal Circuit (Federal Circuit) has found the language and congressional
intent behind section 771(35) of the Act to be ambiguous.  Furthermore, antidumping
investigations and administrative reviews are different proceedings with different
purposes.  Specifically, in antidumping investigations, the Act specifies particular

(continued...)

Missing, however, is reasoning adequate to link these differences to the Department's varying

constructions of the words of the statutes in the two contexts.  The Court of Appeals concluded

in *JTEKT Corp.* that providing this list of differences "failed to address the relevant

question—why is it a reasonable interpretation of the statute to zero in administrative reviews,

but not in investigations?"  *JTEKT Corp.*, 642 F.3d at 1384.

The arguments other parties to this case advance in opposition to reconsideration do not

persuade the court.  Defendant argues that *Dongbu* does not justify reconsideration of the

decision in *Union II* because *Dongbu* was limited to its unique procedural setting, in which

Commerce lacked any opportunity to respond to the plaintiff's statutory interpretation argument.

Def.'s Opp'n 6.  The court does not read the opinion in *Dongbu* so narrowly as to consider the

reasoning of *Dongbu* inapplicable here.  To do so would miss the more general point that in

_____

[3](...continued)
types of comparisons that may be used to calculate dumping margins and the
conditions under which those types of comparisons may be used.  The Act discusses
the types of comparisons used in administrative reviews.  The Department's
regulations further clarify the types of comparisons that will be used in each type of
proceeding.  In antidumping investigations, the Department generally uses
average-to-average comparisons, whereas in administrative reviews the Department
generally uses average-to-transaction comparisons.  The purpose of the dumping
margin calculation also varies significantly between antidumping investigations and
reviews. In antidumping investigations, the primary function of the dumping margin
is to determine whether an antidumping duty order will be imposed on the subject
imports.  In administrative reviews, in contrast, the dumping margin is the basis for
the assessment of antidumping duties on entries of merchandise subject to the
antidumping duty order.  Because of these distinctions, the Department's limiting of
the Final Modification to antidumping investigations involving average-to-average
comparisons does not render its interpretation of section 771(35) of the Act in
administrative reviews improper. Therefore, because section 771(35) of the Act is
ambiguous, the Department may interpret that provision differently in the context of
antidumping investigations involving average-to-average comparisons than in the
context of administrative reviews.
Issues & Decisions Mem., A-580-816, ARP 3-08, 4-5 (Mar. 10, 2008) (Admin. R. Doc.
No. 4563) (internal citations omitted).

*Dongbu*, as well as in *JTEKT Corp.*, the Court of Appeals refused to affirm a judgment of the

Court of International Trade affirming the use of zeroing in an administrative review.  Moreover,

*JTEKT Corp.* vacated a judgment upholding the Department's use of zeroing when the

Department not only had an opportunity to explain such use but did so using essentially the same

rationale as Commerce offered here.

U.S. Steel argues that the court should not reconsider the decision in *Union II* upholding

zeroing because *Dongbu* did not change the controlling law, instead holding the Department's

inconsistent interpretation of § 1677(35) to be insufficiently explained but not necessarily

unlawful.  U.S. Steel's Opp'n 5-6.  The court agrees with U.S. Steel's argument in one respect:

*Dongbu* did not hold unlawful any conceivable construction of 19 U.S.C. § 1677(35) that allows

for a different result as to the use of zeroing in investigations as opposed to reviews.  It does not

follow, however, that the court may not, or should not, reconsider its prior decision in *Union II*

affirming the use of zeroing in the thirteenth review.  To the contrary, reconsideration is

appropriate now that the Court of Appeals, in *JTEKT Corp.* and *Dongbu*, has questioned the

Department's statutory construction and declined to affirm judgments of the Court of

International Trade that resolved zeroing claims on essentially the reasoning the court employed

in *Union II*.  The decisions in *JTEKT Corp.* and *Dongbu* indicate, at the least, that the

Department's interpretation of § 1677(35) is unsustainable absent an explanation different from

the one the Department put forth in the thirteenth review.  *See JTEKT Corp.*, 642 F.3d

at 1383-85; *Dongbu*, 635 F.3d at 1371-73.

Nucor's objections are similarly unpersuasive.  Nucor cites the fact that Union's motion

for reconsideration was filed more than thirty days after the court's decision in *Union II*, thus

making reconsideration under USCIT Rule 59(a) unavailable, and also cites the inapplicability of

USCIT Rule 60(b) to the non-final order issued in *Union II*.  Nucor's Opp'n 2-4.  Nucor's

arguments do not negate the general authority of the court to reconsider non-final orders, as

recognized by USCIT Rule 54(b).

In summary, remand in this case is appropriate so that Commerce may alter its decision

to apply zeroing with respect to Union in the thirteenth review or, alternatively, provide an

explanation as contemplated in *JTEKT Corp.* and *Dongbu*, *i.e.*, an explanation of how the

language of 19 U.S.C. § 1677(35) as applied to the use of zeroing permissibly may be construed

in one way with respect to investigations and the opposite way with respect to administrative

reviews.

### III.  CONCLUSION AND ORDER

Upon consideration of all proceedings and submissions herein, and upon due
deliberation, it is hereby

**ORDERED** that the *Final Results of Redetermination Pursuant to Remand* (April 11,
2011), ECF No. 143 ("Second Remand Results") be, and hereby are, affirmed with respect to the
decision stated therein to modify the Department's model match methodology; it is further

**ORDERED** that plaintiff's motion for leave to file a reply in support of the Second
Remand Results be, and hereby is, DENIED as moot; it is further

**ORDERED** that plaintiff's Motion for Reconsideration, filed on April 5, 2011, be, and
hereby is, GRANTED; it is further

**ORDERED** that the court's previous affirmance of the decision of the International
Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in
*Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of
Final Results of the Thirteenth Admin. Review*, 73 Fed. Reg. 14,220 (Mar. 17, 2008) ("Final
Results") to apply the Department's zeroing methodology be, and hereby is, set aside; it is
further

**ORDERED** that, on remand, Commerce must reconsider its decision in the Final Results
to apply its zeroing methodology and must either alter that decision or explain how the language

of 19 U.S.C. § 1677(35) permissibly may be construed in one way with respect to the use of the zeroing methodology in antidumping investigations and the opposite way with respect to the use of that methodology in antidumping administrative reviews, and shall recalculate any antidumping duty margin applied to plaintiff that is affected by an alteration of that decision; it is further

     **ORDERED** that Commerce shall file the results of its remand redetermination with the court not later than sixty (60) days from the date of this Opinion and Order, and that plaintiff and defendant-intervenors shall have thirty (30) days from the date on which Commerce files its remand redetermination to file any comments thereon; and it is further

     **ORDERED** that defendant shall be allowed fifteen (15) days from the last filing of any comments by plaintiff or defendant-intervenors in which to file a rebuttal or other response to the comments of plaintiff or defendant-intervenors.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: November 21, 2011
      New York, New York